UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS JACKSON DIN-12A3039,

                Plaintiff,

-against-

COMMISSIONER HEARING OFFICER A. POLIZZI, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-03105 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Thomas Jackson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 on April 16, 2020. (*See* Doc. 2). Plaintiff complains in the First Amended Complaint ("FAC"), the operative pleading, that four employees of the New York State Department of Corrections and Community Supervision—Commissioner Hearing Officer A. Polizzi ("Polizzi"), Superintendent Jamie M. LaManna ("LaManna"), Sergeant T. Brooks ("Brooks"), and Director of Special Housing Unit D. Venettozzi ("Venettozzi," and collectively, "Defendants")—violated his Fourteenth Amendment right to procedural due process in connection with a disciplinary hearing and its related appeals. (*See* Doc. 28, "FAC").

    Defendants filed a motion to dismiss the FAC on April 9, 2021. (Doc. 42; Doc. 43, "Def. Br."). Plaintiff opposed the motion by memorandum of law docketed on September 14, 2021 (Doc. 58, "Opp."), and the motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion on October 1, 2021 (Doc. 61, "Reply Br.").

    For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART.

## BACKGROUND

    The events underlying this action began at approximately 8:00 p.m. on September 11, 2017 inside the Special Housing Unit ("SHU") of Sing Sing Correctional Facility ("Sing Sing") in

Ossining, New York. (FAC ¶ 13; *see also* Doc. 6 at 1-2 (specifying that the underlying events occurred at Sing Sing)). On that date and time, as a nurse dispensed medication inside the SHU, Plaintiff saw Correction Officer Murdoch ("Murdoch") and accused her of fabricating a misbehavior report against another inmate, Jeremiah Walker. (FAC ¶¶ 14-16). Two days later, on September 13, 2017, Plaintiff was charged with "creating a disturbance, harassment, direct order and interference," vis-à-vis his interaction with Murdoch. (*Id*. ¶ 18).

Brooks was assigned to assist Plaintiff in preparing for the disciplinary hearing related to the Murdoch interaction. (*Id*. ¶ 19). Plaintiff met with Brooks on September 17, 2017 and asked that Brooks secure copies of: (1) audio and visual recordings from September 11, 2017; and (2) related paperwork (specifically, the "movement and control sheet") from that day. (*Id*. ¶¶ 19-22). Plaintiff maintains that these items were crucial to his defense and would have vindicated his account of events at his disciplinary hearing. (*Id*. ¶¶ 20-22, 28, 31, 41-42). Brooks failed to secure these items. (*Id*. ¶¶ 24, 26-27, 41).

Polizzi presided over Plaintiff's disciplinary hearing, which began on October 18, 2017 and at which Murdoch testified. (*Id*. ¶¶ 4, 23, 32). On or about that date, Plaintiff inquired about the requests he made to Brooks and learned—from Polizzi—that the items had not been retrieved. (*Id*. ¶¶ 24-25). According to Plaintiff, Polizzi refused to procure copies of the paperwork and said he could not secure copies of the recordings because they were not preserved. (*Id*. ¶¶ 25, 29-30, 34). Plaintiff objected to the disciplinary proceeding in its entirety because the failure to retrieve the requested evidence constituted a violation of due process. (*Id*. ¶¶ 26, 33).

Polizzi issued a written decision after the hearing finding Plaintiff "guilty as charged based on staff's statement and" sentencing him to three months' incarceration in the SHU. (*Id*. ¶ 35).

Plaintiff appealed Polizzi's determination to LaManna, who affirmed Polizzi's initial determination. (*Id*. ¶¶ 36-37, 43). Plaintiff then appealed LaManna's decision to Venettozzi, who affirmed LaManna's decision. (*Id*. ¶¶ 38-39, 43). Plaintiff, in turn, challenged Venettozzi's conclusions in state court by way of a proceeding under Article 78 of the New York Civil Practice Law and Rules. (*Id*. ¶ 40). Plaintiff does not plead clearly the outcome of that proceeding.[1]

While Plaintiff was confined to the SHU:

> he was denied physical therapy for his left thigh injury, denied a wheelchair to go to the visit room, denied an MRI for left thigh injury, denied cane for right ankle . . . confined for 24 hours a day in a cell . . . deprived of most of his personal property, as well as the ability to work, attend education and vocational programs, watch television, listen to walkmen, associate with other incarcerated persons, attend outdoor recreation in congregated setting . . . attend meals with other incarcerated persons, to attend religious services, deprived of a handicap cell, one shower a week, lack of soap . . . no cleaning supplies, no books to read, no personal letters . . . shackles and chains on every time escorted out of cells, no talking, cell lights always on bright, cell always cold, limited change of clothes, no phone calls, limited medical attention, dirty cells, bodily waste on cell floor for 3 weeks, no rec. for 7 weeks, no contact visits, loud noises all night, no bed for a week.

(*Id*. ¶ 45(1)). Plaintiff now brings suit alleging that Defendants violated his right to procedural due process under the Fourteenth Amendment. (*See id*. ¶¶ 41-43).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads

---

[1] Plaintiff pled simply that he "filed an Article 78, which was reversed on January 15, 2019." (FAC ¶ 40).

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to

meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). The purported violations here stem from the Fourteenth Amendment right to procedural due process. (*See* FAC ¶¶ 41-43).

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV

§ 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

I. Personal Involvement: LaManna and Venettozzi

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Moreover, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that person; rather, even supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Plaintiff here failed to implicate LaManna or Venettozzi in any constitutional violation.

LaManna and Venettozzi are named in this action because they reviewed disciplinary determinations on appeal: LaManna affirmed Polizzi's at the first level and Venettozzi affirmed LaManna's analysis at the second level. (FAC ¶¶ 42-43). That is the entirety of their role in the purported due process violation. (*See generally id.*). As this Court observed recently, merely sitting in an appellate review capacity is insufficient to establish personal involvement in a constitutional violation because "review and affirmation of the disposition of Plaintiff's disciplinary hearing is

6

distinct from the alleged underlying constitutional deprivation." *Arriaga*, 2021 WL 5449849, at *5 (citing *Ortiz v. Russo*, No. 13-CV-05317, 2015 WL 1427247, at *14 (S.D.N.Y. Mar. 27, 2015)).

As the allegations implicate neither LaManna nor Venettozzi in the purported due process violations, the claims against them are dismissed for lack of personal involvement.[2]

II. Procedural Due Process Violations: Brooks and Polizzi

Turning to the merits of the purported violation, Defendants argue that Plaintiff failed to state a procedural due process claim because he failed to plead a protected liberty interest and, in any event, received all the process he was due. (Def. Br. at 4-9). The Court disagrees.

    A. Prong One: Protected Liberty Interest

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). Indeed, dismissal has been found appropriate where the period of confinement in relation to disciplinary hearings is shorter than 101 days unless the plaintiff presents facts establishing that the conditions imposed "atypical and significant hardship." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) ("[C]onfinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than

---

[2] There is a split among trial courts in the Second Circuit as to whether an individual reviewing a disciplinary proceeding on appeal is personally involved in the underlying constitutional violation—and this split entitles such officials, at this moment, to qualified immunity. *See Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *6 (S.D.N.Y. June 23, 2021) (concluding that the split in trial court decisions "entitle[d] Venettozzi to qualified immunity"). This provides a separate, independent basis for dismissing LaManna and Venettozzi, which the Court adopts.

usual."); *Arriaga*, 2021 WL 5449849, at *7; *Jackson*, 2021 WL 2581340, at *9-10; *Reaves v. Williams*, No. 95-CV-00281, 1997 WL 10132, at *4-5 (S.D.N.Y. Jan. 10, 1997); *Rivera v. Coughlin*, No. 92-CV-03404, 1996 WL 22342, at *4-5 (S.D.N.Y. Jan. 22, 1996); *Rosario v. Selsky*, No. 94-CV-06872, 1995 WL 764178, at *4-6 (S.D.N.Y. Dec. 28, 1995).

Plaintiff complains in a single, conclusory, run-on sentence—stretching twenty handwritten lines—that a variety of his liberty interests were violated. (FAC ¶ 45(1)). Defendants, in seeking dismissal, gloss over the substance of the allegations and rely principally on the fact that Plaintiff was confined for less than 101 days to support their position that the conditions Plaintiff endured did not implicate a protected liberty interest envisioned by *Sandin* and its progeny. (Def. Br. at 4-6; Reply Br. at 2-3). To be sure, Plaintiff's recitation of alleged maltreatment is generally conclusory and encompasses characteristics of segregated confinement that have been accepted as part and parcel of SHU confinement for decades. *See Nogueras v. Coughlin*, No. 94-CV-04094, 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) (noting that "[r]estrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities" do not amount to atypical hardship). Two of his factual allegations, however, pass muster. Specifically, Plaintiff alleges that he: (1) was kept in his cell twenty-four hours a day for seven weeks and forced to wear chains whenever he left his cell; and (2) lived with human excrement on the floor of his cell for three weeks. (FAC ¶ 45(1)).[3]

---

[3] Defendants note, in their reply, that Plaintiff changed his story in the opposition brief, having pled that he was kept in a cell for twenty-four hours a day and denied recreation for seven weeks (which leads to the logical inference that Plaintiff was confined around the clock for only seven weeks), but arguing in his brief that he was denied recreation for ninety days. (Reply Br. at 2-3; *compare* FAC ¶ 45(1), *with* Opp. at 1). "[W]hile the Court may consider factual allegations in Plaintiff's Opposition in light of the liberal construction afforded to *pro se* pleadings, it is not appropriate to do so where those 'allegations are [in]consistent with the complaint." *Lee v. Verizon*, No. 15-CV-00523, 2016 WL 737916, at *5 (E.D.N.Y. Feb. 23, 2016) (quoting *Pahuja v. Am. Univ. of Antigua*, 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) (alteration in original)). Nevertheless, a liberal reading of the FAC—without reference to newly-minted allegations in the opposition brief—is sufficient to plead a protected liberty interest at this stage.

Such allegations, at this juncture and without the benefit of factual development, plead plausibly that Plaintiff's confinement deprived him of a protected liberty interest for the purposes of stating a procedural due process claim. *See, e.g.*, *Holmes v. Grant*, No. 03-CV-03426, 2006 WL 851753, at *9 (S.D.N.Y. Mar. 31, 2006) ("The fact that he was confined in his cell for twenty-four hours a day for thirteen days and forced to wear restraints whenever he left his cell may be sufficient to establish that his confinement was 'atypical and significant' and thus implicates a liberty interest."); *Jackson v. Prack*, No. 16-CV-07561, 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019) (ninety days in the SHU during which the plaintiff was, *inter alia*, "subjected to other inmates throwing feces around him," sufficient to plead a liberty interest); *cf. Gatson v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) ("We are unwilling to adopt . . . the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); *Ortiz v. Dep't of Corr. of City of New York*, No. 08-CV-02195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011) ("A Section 1983 claim will not lie for prison conditions that are merely unpleasant. However, chronic exposure to human waste will give rise to a colorable claim."), *adopted sub nom. Ortiz v. Hernandez*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011); *but see Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 491 (S.D.N.Y. 2014) ("Plaintiffs . . . allege that they were confined in their sewage-flooded cells for, at most, eight and a half hours. While deniably unpleasant, and something that prison officials should prevent, this . . . is not grounds for an Eighth Amendment claim." (internal citations omitted)).[4]

---

[4] The Court does not conclude that any of the other violations are or are not sufficient to state a protected liberty interest. Defendants may revisit these issues with specificity on a motion for summary judgment, after the close of discovery, should they be so advised.

The Court concludes that Plaintiff, as a *pro se* litigant, has pled facts sufficient to meet the first prong of a claim for violation of his procedural due process rights.

### B. Prong Two: Insufficient Process

Having concluded that Plaintiff alleged plausibly a protected liberty interest, the Court turns to the second step in the analysis; namely whether Plaintiff pled that Brooks and Polizzi—in their separate roles—provided him with insufficient process.

#### 1. Brooks

It is well established in the Second Circuit that when an inmate is confined to the SHU, "due process requires that he receive 'substantive assistance in preparing a defense.'" *Girard v. Chuttey*, 826 F. App'x 41, 45 (2d Cir. 2020) (quoting *Ayers v. Ryan*, 152 F.3d 77, 80-81 (2d Cir. 1998)). This assistance, "an obligation imposed by the Due Process Clause of the Fourteenth Amendment," *Amaker v. Goord*, No. 09-CV-00396, 2019 WL 1033511, at *2 (W.D.N.Y. Mar. 5, 2019) (internal quotation marks omitted), involves "'gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses.'" *Elder v. McCarthy*, 967 F.3d 113, 126 (2d Cir. 2020) (quoting *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988)). "At a minimum, the assistant should perform the investigatory tasks which the inmate, were he able, could perform himself," *Amaker*, 2019 WL 1033511, at *2 (internal quotation marks omitted), and do so "in good faith and in the best interests of the inmate." *Mayo v. Lavis*, No. 11-CV-00869, 2016 WL 2756545, at *7 (W.D.N.Y. May 12, 2016) (quoting *Eng*, 858 F.2d at 898), *aff'd*, 689 F. App'x 23 (2d Cir. 2017).

Plaintiff alleges that Brooks failed to provide him with any of the information he requested—specifically, recordings and paperwork that Plaintiff insists would have corroborated his version of events. (*See* FAC ¶¶ 19-22, 24, 27-28, 41). That is sufficient, at this juncture, for Plaintiff to state a claim for a procedural due process claim against Brooks. *See, e.g.*, *Mena v.*

*Gutwein*, No. 19-CV-03882, 2020 WL 5370708, at *5 (S.D.N.Y. Sept. 8, 2020) (denying motion to dismiss where the plaintiff alleged that his hearing assistant "did not interview any of the potential witnesses plaintiff identified and failed to provide many of the documents plaintiff requested before his disciplinary hearing"); *Gibson v. Travis*, No. 14-CV-08764, 2016 WL 796865, at *4 (S.D.N.Y. Feb. 25, 2016) ("[T]he Court finds plaintiff has adequately ple[d] Officer Gonzalez did not meet well-established obligations. In particular, Gonzalez allegedly refused to provide any of the documents plaintiff requested . . . ."); *see also Ayers*, 152 F.3d at 81 ("[I]t is clear enough that Ryan violated Ayers' due process rights by undertaking to act as Ayers' assistant and then doing nothing to assist.").

The motion to dismiss the claim against Brooks is, consequently, denied.

    2. <u>Polizzi</u>

In the context of disciplinary proceedings, an inmate should receive: "(1) advance written notice of the charges against him to enable him to marshal the facts and prepare a defense; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a short written statement presenting the reasons and evidence supporting any disciplinary action ultimately taken." *Amaker v. Coombe*, No. 96-CV-01622, 2002 WL 523388, at *9 (S.D.N.Y. Mar. 29, 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). As to the second element, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and . . . limit access to . . . documentary evidence," *Wolff*, 418 U.S. at 566, and the right "can be denied on the basis of irrelevance of lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). Due process is satisfied if "some evidence" supports the hearing's result. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (internal quotation marks omitted).

Reading the FAC broadly and giving Plaintiff the benefit of every inference, he complains that Polizzi—after learning about Brooks' failure to provide Plaintiff with *any* of the requested evidence—failed to secure the evidence himself or assign Plaintiff another hearing assistant. (*See* FAC ¶¶ 23-25, 28-31, 34). The Court cannot, without a more developed factual record, determine as a matter of law that Polizzi's actions did or did not satisfy the dictates of due process with regard to Plaintiff's right to present documentary evidence in his defense. *See Mena*, 2020 WL 5370708, at *6 (denying motion to dismiss procedural due process claim against hearing officer who, *inter alia*, did not "provide an alternative hearing assistant" after being notified of inadequate assistance and "did not provide plaintiff with the requested documents" his assistant failed to procure); *see also Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014) (denying motion to dismiss procedural due process claim because the court could not conclude, from the face of the complaint, whether the hearing officer was justified in excluding certain evidence).

The motion to dismiss the claim against Polizzi is, likewise, denied.[5]

---

[5] Defendants insist alternatively that the claims against Brooks and Polizzi should be dismissed by operation of qualified immunity. (Def. Br. at 10-11; Reply Br. at 6-7). The affirmative defense of "[q]ualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (alteration added)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013) (internal quotation marks omitted)). At this stage, based on the facts pled and without the benefit of discovery, the Court rejects that argument.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and the claims against LaManna and Venettozzi are dismissed. The case shall proceed to discovery, however, with respect to Brooks and Polizzi. The Court will issue a Notice of Initial Pretrial Conference in short order.

The Clerk of the Court is respectfully directed terminate the motion sequence pending at Doc. 42, terminate LaManna and Venettozzi from the docket, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED:

Dated: White Plains, New York
       December 13, 2021

_____
PHILIP M. HALPERN
United States District Judge